### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
MARIA ELENA ORTIZ            :    Civ. No. 3:15CV00956(SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN, ACTING    :    July 26, 2016
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

### <u>RULING ON CROSS MOTIONS</u>

Plaintiff Maria Elena Ortiz ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for judgment on the administrative record and pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. [Doc. #16].

For the reasons set forth below, plaintiff's Motion for Judgment on the Administrative Record and Pleadings Pursuant to Fed. R. Civ. P. 12(c) **[Doc. #16]** is **GRANTED**, to the extent it seeks remand for a new hearing. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #21]** is **DENIED.**

1

I.   <u>**PROCEDURAL HISTORY**</u>

Plaintiff filed concurrent applications for DIB and SSI on February 14, 2012, alleging disability beginning February 28, 2011. (Certified Transcript of the Administrative Record, compiled on August 2, 2015, (hereinafter "Tr.") 197-209). Plaintiff's applications were denied initially on May 9, 2012, (Tr. 61-84), and upon reconsideration on October 12, 2012. (Tr. 87-112).

On February 18, 2014, the plaintiff, accompanied and represented by attorney Danielle Choi, appeared and testified at a hearing before Administrative Law Judge ("ALJ") James E. Thomas. (Tr. 35-60). Vocational Expert ("VE") Richard B. Hall also testified at the hearing. (Tr. 56-59). On March 19, 2014, the ALJ issued an unfavorable decision. (Tr. 18-34). On April 17, 2015, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 19, 2014, decision the final decision of the Commissioner. (Tr. 1-6). The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by attorney Howard D. Olinksy, timely filed this action for review and now moves to reverse the Commissioner's decision. [Doc. #16]. On appeal, plaintiff asserts the following:

1.      The ALJ erred in his application of the treating physician rule;

2.      The ALJ erred in determining that plaintiff did not have any severe physical impairments;

3.      The ALJ's credibility assessment is not supported by substantial evidence; and

4.      The ALJ's step four determination is not supported by substantial evidence.

As set forth below, the Court finds that ALJ Thomas erred in his application of the treating physician rule, and that the ALJ's credibility determination is not supported by substantial evidence. The Court does not reach the merits of plaintiff's remaining contentions as they concern her alleged physical impairments, in light of the above determinations.

## II.   <u>STANDARD OF REVIEW</u>

The review of a social security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere

scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)). The reviewing court's responsibility is to ensure that
a claim has been fairly evaluated by the ALJ. Grey v. Heckler,
721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence."). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial

evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009); 42 U.S.C. §405(g).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

5

To be considered disabled under the Act and therefore entitled to benefits, Ms. Ortiz must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A)(alterations added); 20 C.F.R. §§404.1520(c), 416.920(c) (alterations added)(requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary

> will consider him disabled without considering
> vocational factors such as age, education, and work
> experience; the Secretary presumes that a claimant who
> is afflicted with a "listed" impairment is unable to
> perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual
> functional capacity to perform his past work. Finally,
> if the claimant is unable to perform his past work,
> the Secretary then determines whether there is other
> work which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." Gonzalez ex rel.

Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243

(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155

(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.

2009) (per curiam)). The RFC is what a person is still capable

of doing despite limitations resulting from her physical and
mental impairments. See 20 C.F.R. §§404.1545(a)(1),
416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that 'the Social Security Act is a remedial statute to be
broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   THE ALJ'S DECISION

Following the above-described five-step evaluation process,
the ALJ concluded that plaintiff was not disabled under the Act.
(Tr. 33). At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity from her alleged onset
date of February 28, 2011. (Tr. 23-24). At step two, the ALJ
found that plaintiff had the severe impairments of affective
disorder and anxiety disorder. (Tr. 24). The ALJ determined that
plaintiff's carpal tunnel syndrome, degenerative disc disease,
asthma, shoulder pain/bursitis, hypertension, tuberculosis,

osteopenia, and perineural cyst were non-severe impairments, "as they do not <u>more</u> <u>than</u> <u>minimally</u> affect the claimant's ability to perform basic work activities."[1] (Tr. 25).

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. <u>Id.</u> The ALJ specifically considered Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). <u>Id.</u> Before moving on to step four, the ALJ found plaintiff had the RFC

---

[1] While the ALJ considered plaintiff's physical symptoms, plaintiff's application for disability benefits, dated February 14, 2012, alleged only depression and panic attacks as conditions limiting her ability to work. (Tr. 61, 87, 235). A Disability Report – Appeal, reflects plaintiff's report that some time after February 14, 2012, plaintiff developed the ailments of asthma and tachycardia. (Tr. 243); <u>see also</u> Tr. 88. The Court notes plaintiff's argument that the ALJ erred at step two by failing to find her physical impairments severe. <u>See</u> Doc. #16-1 at 10-12. This argument is not compelling for several reasons, including that plaintiff did not apply for disability benefits on the basis of any physical impairments. This casts serious doubt as to whether plaintiff was suffering from a severe physical impairment during the relevant time frame. <u>See, e.g.,</u> <u>Sellers v. Heckler</u>, 590 F. Supp. 1141, 1146 (S.D.N.Y. 1984) (finding that the record did not support a conclusion that plaintiff suffered from a severe mental impairment, and noting that "plaintiff's mental impairment, if any, was not raised in her initial application[.]"). The Court need not consider plaintiff's step two arguments in light of the findings below. Nevertheless, this is not an error which, in the Court's estimation, would require further review upon remand.

to perform a full range of work at all exertional
levels but with the following nonexertional
limitations: the claimant is able to perform simple
routine, repetitive tasks with short simple
instructions and few workplace changes, has the
attention span to perform simple work tasks for 2 hour
intervals throughout an eight-hour workday, is able to
tolerate occasional interaction with supervisors,
occasional superficial interaction with coworkers, and
none with the general public, with no high paced
production demands or strict adherence to timed
production.

(Tr. 27-28). At step four, the ALJ concluded that plaintiff was
capable of performing her past relevant work as a cleaner. (Tr.
32).

## V.   DISCUSSION

Plaintiff raises four arguments in support of reversal or
remand. The Court begins with the argument that the ALJ erred in
the application of the treating physician rule.

### A.   The Treating Physician Rule

Plaintiff argues that the ALJ erred in evaluating the
medical opinion evidence to determine plaintiff's RFC, in that
the ALJ failed to assign controlling weight to the opinions of
the treating physicians and relied exclusively on the opinions
of the state agency review physicians, employing a "pick and
choose" approach to support his preferred conclusion. [Doc. #16-
1 at 6-10]. Plaintiff contends that the treating physicians'
opinions are consistent with the medical evidence of record and

supported by the length and nature of their treatment relationships with plaintiff. [Doc. #16-1 at 7-8].

The ALJ assigned "little weight" to the opinions of plaintiff's treating physicians Dr. Julian Nieves and Dr. Victor Tirado (Tr. 31-32); "some weight" to the opinion of Consultative Examiner Dr. Lilliam Martinez (Tr. 31); "little weight" to the opinion of Consultative Examiner Dr. Margarita Hernandez (Tr. 32); and "great weight" to the opinions of non-examining state agency physicians Drs. Camellus Ezeugwu, Anita Bennett, Adrian Brown and Raman Gill Chahal (Tr. 30-31).

The ALJ determined that little weight should be afforded to both treating physicians' opinions because, in his view, they were not consistent with the state agency opinions, the consultative examinations, and the treatment notes contained in the record, and because the opinions were internally inconsistent. (Tr. 31-32). The ALJ also afforded little weight to Dr. Tirado's opinion "as it is not consistent with ... this provider's own treatment notes which indicate that claimant had a GAF score of 55, which does not support a finding of any very serious limitations."[2] (Tr. 31).

_____

[2] The Court notes that each of Dr. Tirado's treatment records contains an identical assigned GAF score of 55, suggesting that the score may have not been independently evaluated each time. Additionally, a GAF score is not necessarily a reliable basis

Dr. Nieves completed a Mental Capacity Assessment on February 11, 2014. (Tr. 702). He opined that plaintiff had marked difficulties in the ability to maintain attention and concentration for extended periods; marked difficulties in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms; and marked difficulties in the ability to perform at a consistent pace with a standard number and length of rest periods.[3] (Tr. 703). Dr. Tirado opined that plaintiff's major depression prevents her

upon which to assess the severity of a claimant's mental impairment(s). See, e.g. Carton v. Colvin, No. 3:13CV379(CSH), 2014 WL 108597, at *15 (D. Conn. Jan. 9, 2014) ("[T]he ALJ erred in relying on the GAF score as an indicative of the severity of plaintiff's mental impairment."); Mateo v. Colvin, No. 14CV6109(MKB), 2016 WL 1255724, at *15 (E.D.N.Y. Mar. 28, 2016) ("The Second Circuit has not assessed whether a GAF generally provides a reliable basis for disability determinations[.]" (citation and internal quotation marks omitted)); Griffin v. Colvin, No. 3:15CV105(JGM), 2016 WL 912164, at *16 (D. Conn. Mar. 7, 2016) (finding the ALJ erred in rejecting opinion of the treating physicians "on the basis that they were not supported by the GAF scores that the treating sources assigned[]" where "[t]he DSM-V eliminates the use of GAF scores entirely" (citation and internal quotation marks omitted)).

[3] As the ALJ noted, Dr. Nieves also determined that plaintiff had extreme limitations in the ability to understand and remember very short, simple instructions, but only moderate limitations in the ability to understand and remember detailed instructions. (Tr. 31, 702). This apparent incongruity appears again in Dr. Nieves' assessment of plaintiff's reported ability to carry out instructions: Dr. Nieves indicated that plaintiff had a marked limitation in her ability to carry out very short and simple instructions, yet only a moderate limitation in carrying out detailed instructions. (Tr. 702).

from working. (Tr. 483). Dr. Tirado co-signed a report, completed by Myriam Cardona, Licensed Clinical Social Worker ("LCSW"), on February 24, 2012, indicating that plaintiff suffered from Major Depressive Disorder with severe psychotic features.[4] (Tr. 480). Ms. Cardona opined that plaintiff had very serious problems carrying out single-step instructions, focusing long enough to finish assigned simple activities or tasks, changing tasks, and performing basic work activities at a reasonable rate and on a sustained basis. (Tr. 482). She also concluded that plaintiff had a very serious problem using appropriate coping skills to meet the ordinary demands of a work environment. (Tr. 481).

The Regulations provide that a treating source's opinion will usually be given more weight than a non-treating source. See 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic

---

[4] ALJ Thomas attributed Ms. Cardona's report to Dr. Tirado, who co-signed the report. (Tr. 487). "Reports co-signed by a treating physician may be evaluated as having been the treating physician's opinion." Beckers v. Colvin, 38 F. Supp. 3d 362, 372 (W.D.N.Y. 2014)(citing Santiago v. Barnhart, 441 F. Supp. 2d 620, 628 (S.D.N.Y. 2006)). Thus, the Court finds that the ALJ's assignment of Ms. Cardona's opinion to Dr. Tirado was proper.

techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion is not entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2).

"[E]ven when a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (citation omitted). The ALJ must consider the length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6); 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) ("In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, inter alia, [the factors above]." (alterations added)).

14

There is no indication that the ALJ considered the factors mandated by the Regulations when evaluating the opinions of Dr. Nieves and Dr. Tirado. The ALJ did not discuss the length of the treating relationship with Dr. Nieves; the frequency with which either physician examined plaintiff; the nature and extent of the treatment relationships; or either treating physician's specialties. Plaintiff testified that she has been seeing Dr. Nieves every week for "more than a year, like two years." (Tr. 40). The records provided by Dr. Nieves indicate that he saw plaintiff for an array of ailments, both physical and mental. (Tr. 468-79; 706-31). He is also listed on other treating notes as plaintiff's physician. See, e.g., Tr. 680-84. Dr. Tirado's opinion indicates that he is a psychiatrist. (Tr. 483). His notes detail examinations of plaintiff and assessments of her mental state, and reflect that he prescribed and monitored anti-anxiety and anti-depressive medications. (Tr. 692-99). His first visit with plaintiff was September 23, 2011, (Tr. 480), and his most recent treatment note of record is dated January 29, 2014 (Tr. 692), evincing over a two year treating relationship. The ALJ's decision does not address the nature or length of Dr. Tirado's treating relationship with plaintiff, nor his specialty.

The ALJ's failure to discuss the factors enumerated in the regulations precludes a determination that the ALJ's conclusions were supported by substantial evidence. "Effective review by this Court is frustrated by the decision's failure to adhere to the regulations." Kohler v. Astrue, 546 F.3d 260, 267 (2d Cir. 2008). The ALJ simply did not provide adequate support for this Court to determine whether there was a proper review of the evidence of record. The ALJ's failure to provide this information warrants remand.

After considering the factors enumerated in the Regulations, the ALJ must "give good reasons" for the weight afforded to the treating source's opinion. Burgess, 537 F.3d at 129-30 (citations omitted). "This requirement greatly assists [the Court's] review of the Commissioner's decision and 'let[s] claimants understand the disposition of their cases.'" Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Here, remand is also warranted because the ALJ failed to set forth "good reasons" for discounting the treating physicians' opinions. In support of his conclusion that the

16

treating physicians' opinions were inconsistent with the treatment notes in the record, the ALJ stated: "Treatment notes [of Dr. Alan Ruiz] dated May 17, 2012, indicated that plaintiff was living alone in an apartment, she was well appearing, her mental status exam was normal, and memory intact."[5] (Tr. 32). However, the same notes state that "[plaintiff] has noticed a recent increase in axiety [sic] symptoms and anxiety attacks that result in chest pain and [shortness of breath]." Id. Dr. Ruiz further observed that plaintiff's mood and affect was anxious and flat at times, and he assigned a diagnosis of anxiety and depression. (Tr. 508-09). Additionally, it appears that this visit to Dr. Ruiz followed a hospitalization for anxiety-related chest pain. (Tr. 507, 509). "Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he ... cannot pick and choose evidence that supports a particular conclusion." Vennor v. Colvin, No. 15CV6385(FPG), 2016 WL 3181171, at *5 (W.D.N.Y. June 3, 2016) (quoting Smith v. Bowen, 687 F. Supp. 902, 804 (S.D.N.Y. 1988));

---

[5] The ALJ erroneously stated that these treatment notes are dated May 17, 2012. (Tr. 32). A closer review of the records referenced reflects that the treatment notes are from plaintiff's visits to Dr. Ruiz on June 5, 2012, and June 7, 2012. (Tr. 507-08). The May 17 date in fact reflects the date on which certain background information of plaintiff, including her risk factors, was entered into the electronic records system. See Tr. 508 (noting "data entered on: 5/17/2012").

see also Tim v. Colvin, No. 6:12CV1761(GLS)(ESH), 2014 WL
838080, at *7 (N.D.N.Y. Mar. 4, 2014) ("[W]hile administrative
law judges are entitled to resolve conflicts in the evidentiary
record, they cannot pick and choose only evidence that supports
their particular conclusions." (citation omitted)); Rodriguez v.
Colvin, No. 3:13CV1195(DFM), 2016 WL 3023972, at *1 (D. Conn.
May 25, 2016).  Thus, this record, as a whole, does not support
the ALJ's assignment of "little weight" to the treating
physicians' opinions.

The ALJ also found that both treating physicians' opinions
were inconsistent with Dr. Tirado's treatment notes from January
29, 2014, reporting plaintiff's self-described anxiety "at
baseline" and plaintiff's expressed desire to reduce her dosage
for Celexa, an anti-anxiety medication. (Tr. 32, 692). However,
on the same date, Dr. Tirado described plaintiff as "fragile
with a low tolerance to stress," and noted that "her functioning
at work is marginal." (Tr. 692). Dr. Tirado also described
plaintiff's mood as dysthymic, and observed: "Mild but diffuse
memory loss with difficulty remembering recent events and
periods of confusion about details is noted." Id. Accordingly,
this treatment note, taken as a whole, is not inconsistent with
the treating physicians' opinions.

In that regard, the Court finds merit in plaintiff's argument that the ALJ "impermissibly picked and chose only evidence that supported his preferred conclusion." [Doc. 16-1 at 9]. In assigning "great weight" to the non-examining state agency reviewing physicians, "some weight" to the consulting examiner and "little weight" to the treating physicians, it appears that the ALJ prioritized evidence that supported his conclusion but discounted evidence that did not. See, e.g., Tim, 2014 WL 838080, at *7.

Moreover, "if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (citing Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)).

> Consideration of the duty to develop the record, together with the treating physician rule, produces an obligation that encompasses the duty to obtain information from physicians who can provide opinions about the claimant. If a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must affirmatively seek out clarifying information from the doctor before discrediting the opinion.

Jackson v. Colvin, No. 13CV5655(AJN)(SN), 2014 WL 4695080, at *17 (S.D.N.Y. Sept. 3, 2014) (internal quotation marks omitted) (compiling cases). Given the number of purported internal

19

inconsistencies identified in the treating physicians' opinions and notes, the ALJ was under an obligation to inquire and attempt to clarify those opinions before discounting them. Information received based on further inquiry might have reconciled the perceived conflicts. See, e.g., Clark, 143 F.3d at 118.

Finally, the ALJ found that the treating physicians' opinions were not supported by Dr. Lilliam Martinez's Consultative Examination, dated April 5, 2012. (Tr. 488-92). Dr. Martinez opined that plaintiff was able to understand, retain and follow instructions, and could sustain attention to perform simple repeated tasks. (Tr. 492). Dr. Martinez did note, however, that plaintiff had "slight difficulty repeating and retaining one out of three unrelated words after a delay during which rehearsal was minimized by intervening tasks; [and] completing two out of five serial sevens that required her to count backwards by sevens." (Tr. 491). Dr. Martinez also diagnosed plaintiff with Major Depression Disorder, Moderate (sic); Posttraumatic Stress Disorder, Chronic; and Panic Disorder Without Agoraphobia; and assigned her a GAF score of 45.[6] (Tr. 492). This opinion, to which the ALJ afforded "some

_____

[6] "A GAF in the range of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

weight," is not sufficient to justify discounting the opinions of the treating physicians. It is not completely contradictory. Furthermore, "[t]he reports of consulting physicians ... should be given limited weight in evaluating a claimant's disability. This is due to the fact that consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Fernandez-Sosa v. Bowen, 701 F. Supp. 74, 78 (S.D.N.Y. 1988) (citations omitted).

"Generally, ... more weight [is given] to opinions from [plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. §§404.1527 (c)(2); 416.927(c)(2) (alterations added). The treating physician's opinion is assigned greater weight "because the continuity of treatment he provides and the doctor/patient

---

shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Zabala v. Astrue, 595 F.3d 402, 406 n.2 (2d Cir. 2010) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. Rev. 2000)) (internal quotation marks omitted).

relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (citations omitted). "This is especially the case with respect to mental health issues because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the claimant." Carton, 2014 WL 108597, at *15 (citing Bethea v. Astrue, 3:10CV744(JCH), 2011 WL 977062, at *11 (D. Conn. Mar. 17, 2011)) (internal quotation marks omitted). Indeed, for this reason, "[i]n the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007); see also Rodriguez v. Astrue, No. 07CV534(WHP)(MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009) (In the context of a claimant's application for SSI based on a mental disability, the findings of the non-examining physician "should have been discounted or addressed with some skepticism because they were largely inconsistent with the examining physician's findings and did not account for the subjective nature of the patient's disease." (citation and internal quotation marks omitted)).

Plaintiff's impairments are primarily psychiatric and thus, the ALJ's reliance on the opinions of the state reviewing non-examining and consulting physicians should be viewed with some skepticism. Where, as here, plaintiff has an established treatment history with not just one, but <u>two</u>, treating physicians, "it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." <u>Velazquez</u>, 518 F. Supp. 2d at 524; <u>see also</u> <u>id.</u> ("[A] psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record." (citing <u>Westphal v. Eastman Kodak Co.</u>, No. 05CV6120, 2006 WL 1720380, at *5 (W.D.N.Y. June 21, 2006))).

In light of the above, this matter is remanded to the ALJ for further consideration and proper application of the treating physician rule. Despite this finding of legal error sufficient to remand, in the interest of efficiency, the Court will also consider plaintiff's contention that the ALJ's credibility determination is not supported by substantial evidence.

**B. <u>The Credibility Determination</u>**

Plaintiff argues that "the ALJ mischaracterized plaintiff's testimony and failed to properly evaluate subjective

23

complaints." [Doc. #16-1 at 12]. Plaintiff contends that the ALJ failed to provide valid reasons for finding plaintiff's testimony not credible. Id. at 13.

The ALJ found "the testimony of the claimant concerning the severity of the aforementioned impairments is not entirely consistent with the medical evidence of record, and as such, is not fully credible. The claimant's testimony at the hearing when viewed in comparison to the treatment records, is minimally credible." (Tr. 28). In concluding that plaintiff lacked credibility, the ALJ pointed to plaintiff's ability to work part-time despite her alleged symptoms; plaintiff's treatment notes; and plaintiff's assigned GAF scores. (Tr. 28-29).[7]

In evaluating a plaintiff's reported symptoms, the ALJ follows a two-step process prescribed by the regulations. First, the ALJ determines whether the record contains evidence of a medically determinable impairment or impairments that could reasonably be expected to produce the alleged symptoms. See 20

---

[7] Notably, despite the ALJ discounting plaintiff's credibility, plaintiff's testimony and statements formed part of the basis for the ALJ's RFC determination. Compare Tr. 28, cited supra, with Tr. 32 ("In sum, the above residual functional capacity assessment is supported by the testimony of the claimant, as well as the claimant's treatment history, medical evidence of record, activities of daily living, work history, the opinions of the examining sources, and non-examining state agency physicians.").

C.F.R. §§404.1529(b); 416.929(b); SSR 96-7P, 1996 WL 374186, at
*1 (S.S.A. July 2, 1996). If an impairment has been established,
at the second step, the ALJ evaluates the intensity,
persistence, and limiting effects of the symptoms. 20 C.F.R.
§§404.1529(c); 416.929(c); SSR 96-7P, 1996 WL 374186, at *1. The
ALJ considers such factors as activities of daily living; the
location, duration, frequency, and intensity of pain and other
symptoms; medications and the plaintiff's response thereto; and
non-medicinal pain relief treatment. See 20 C.F.R.
§§404.1529(c); 416.929(c); SSR 96-7P, 1996 WL 374186, at *3. The
ALJ assesses plaintiff's statements in relation to all of the
other evidence in the record to determine whether a disability
exists. 20 C.F.R. §§404.1529(c); 416.929(c); SSR 96-7P, 1996 WL
374186, at *1.

> The finding on the credibility of the individual's
> statements cannot be based on an intangible or
> intuitive notion about an individual's credibility.
> The reasons for the credibility finding must be
> grounded in the evidence and articulated in the
> determination or decision. It is not sufficient to
> make a conclusory statement that "the individual's
> allegations have been considered" or that "the
> allegations are (or are not) credible." It is also not
> enough for the adjudicator simply to recite the
> factors that are described in the regulations for
> evaluating symptoms. The determination or decision
> must contain specific reasons for the finding on
> credibility, supported by the evidence in the case
> record, and must be sufficiently specific to make
> clear to the individual and to any subsequent
> reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that

weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7P, 1996 WL 374186, at *4.

The Court finds that the ALJ's credibility determination is not supported by substantial evidence. The ALJ first cites to plaintiff's ability to "work part-time" as evidence that her impairments are not as limiting as she claims. (Tr. 28). This conclusion mischaracterizes plaintiff's testimony. Plaintiff testified that she was working only two hours a day, three days a week. (Tr. 42). She had not been to work in the days prior to the hearing because "they don't want [her] crying at the job." Id. She testified that she would take three to four days off at a time when she did not feel well, and recently missed a month of work due to her symptoms. (Tr. 42-43). Plaintiff's ability to intermittently work at most two hours a day, three days a week, does not undermine plaintiff's testimony regarding the limiting effects of her symptoms -- to the contrary, it supports her allegations that she is unable to maintain substantial gainful activity.

Next, the ALJ stated that plaintiff's testimony was inconsistent with her treatment records. In addition to her testimony about her inability to work, plaintiff testified at length regarding her depression and panic attacks. (Tr. 44-53).

She testified that her son drives her when she is feeling
panicked or nervous (Tr. 44); she was admitted to the Institute
of Living due to panic attacks (Tr. 51-52); she has difficulty
going out in public (Tr. 52); and when she experiences a panic
attack, her mouth and face become numb and she has difficulty
breathing. (Tr. 53). She testified that she cannot work because
she feels "worthless," and she would be unable to maintain a
full-time position due to stress and because she goes "bad."
(Tr. 54-56). Plaintiff noted that she was prescribed a higher
dosage of medication in the week prior to the hearing and was
feeling happier, without experiencing a panic attack (Tr. 52).
Plaintiff was unable to answer several questions posed during
the hearing due to an inability to remember. (Tr. 44-47). Her
account of her daily activities indicated that she had
difficulty with memory and concentration. (Tr. 231).

   As a whole, plaintiff's treatment records appear consistent
with plaintiff's testimony regarding her mental health symptoms.
While the ALJ points to treatment notes from April 22, 2010,
indicating that plaintiff had declined anti-depressants, (Tr.
29), those notes pre-date the alleged onset date of plaintiff's
disability. Multiple treatment notes during the relevant time
period list anti-depressants and anxiety medication as current
medications. See, e.g., Tr. 468, 472, 480, 493, 638, 693, 719.

27

Moreover, the Court is not persuaded that an expressed desire to reduce or stop taking anti-depression medication at one point during treatment is inconsistent with ongoing symptoms of depression and anxiety.

The remainder of the ALJ's credibility determination appears to rest on treatment notes reflecting fluctuating changes in plaintiff's mood, memory, and functioning. (Tr. 29). These notes do not provide support for the ALJ's decision to discount plaintiff's credibility. Given the cyclical nature of plaintiff's mental illness, it is reasonable to assume that on any given day plaintiff may have exhibited improvements; this alone would not be dispositive on the issue of plaintiff's credibility regarding her symptoms. See, e.g., Bauer v. Astrue, 532 F.3d 606 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days. ... Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."). The ALJ facially acknowledged the cyclical nature of plaintiff's illness by citing treatment records reporting insomnia, lack of motivation, GAF scores of 50 and 46, fragile mood, and low

stress tolerance, (Tr. 29), but failed to reconcile his ultimate credibility determination with such records.

The Court is not satisfied that there is substantial evidence in the record supporting the ALJ's ultimate determination that plaintiff was "minimally credible." As such, upon remand, the ALJ is directed to reevaluate the plaintiff's credibility, taking into account the above considerations.

## VI. **CONCLUSION**

In light of these findings, the Court need not reach the merits of plaintiff's remaining arguments.[8] Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling, in which the ALJ reconsiders the administrative record, weighs the evidence, holds another hearing if necessary, and issues a new decision in which he explains his findings with specificity. Therefore, plaintiff's Motion for Judgment on the Administrative Record and Pleadings Pursuant to Fed. R. Civ. P. 12(c) **[Doc. #16]** is **GRANTED**, to the extent it seeks to remand this matter to the Commissioner for further proceedings. Defendant's Motion for

---

[8] The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to reweigh the medical opinion evidence and reevaluate plaintiff's credibility.

an Order Affirming the Commissioner's Decision **[Doc. #21]** is

**DENIED**.

The Clerk's Office is instructed that, if any party appeals

to this Court the decision made after this remand, any

subsequent social security appeal is to be assigned to the

Magistrate Judge who issued the Ruling that remanded the case.

This is not a recommended ruling. The parties consented to

proceed before a United States Magistrate Judge [Doc. #13] on

October 30, 2015, with appeal to the Court of Appeals.

SO ORDERED at New Haven, Connecticut, this 26th day of July,

2016.

                              _____/s/_____
                              HON. SARAH A. L. MERRIAM
                              UNITED STATES MAGISTRATE JUDGE